L. R. BOULDIN and Ralph B. Bouldin, Appellants,

v.

James K. WOOSLEY, Appellee.

No. 5355.

Court of Civil Appeals of Texas, Waco.

Feb. 20, 1975.

Michael J. Rogers, Jon P. Hammond, Cleburne, for appellants.

Floyd R. Wilson, Meridian, Andrew Campbell, Hamilton, for appellee.

OPINION

JAMES, Justice.

This is a specific performance suit. Plaintiff-Appellee James K. Woosley brought this suit against Defendant-Appellants L. R. Bouldin and Ralph B. Bouldin for specific performance of a written contract to convey a 540 acre tract of land located in Bosque County, Texas. The trial court sitting without a jury heard the testimony, after which he entered judgment in favor of Plaintiff-Appellee Woosley and decreed specific performance, from which judgment Defendant-Appellants appeal on two points of error. We affirm the trial court's judgment.

Appellants' first point asserts: "The trial court erred in finding that Appellee (Woosley) gave valid, effective and timely notice

to Appellants of the exercise of the option to purchase the 540 acres of land." We overrule this point.

The trial court's judgment contains specific facts findings, among which is "That Plaintiff (Woosley) gave valid, effective and timely notice to Defendants (the Bouldins) of the exercise of the option to purchase said 540 acres of land."

On March 23, 1971, Plaintiff-Appellee (Woosley) and Defendant-Appellants (L. R. Bouldin and Ralph B. Bouldin) executed a written contract in which the Bouldin brothers agreed, among other things, to lease to Woosley a 540 acre tract of land for a term of three years, beginning March 23, 1971, and terminating March 22, 1974. The two Bouldin brothers owned the tract of land in question as tenants in common. As a part of the lease agreement, the Bouldins agreed to give Woosley the option to purchase the land at any time during the first year of the lease upon certain conditions. The contract provided "Such option shall be exercised by the first party (Woosley) giving to the second parties (the Bouldins) notice of his intention to exercise the same in writing and paying as a down payment during that calendar year the sum of 12½% of the total consideration." The contract was personally signed and executed on March 23, 1971, by Plaintiff-Appellee Woosley and Defendant-Appellant L. R. Bouldin, who signed "individually and as agent for Ralph B. Bouldin." Ralph B. Bouldin thereafter signed the contract with the following notation above his signature, to wit:

"I hereby ratify and confirm the above contract that was heretofore executed by my brother L. R. Bouldin as my agent and Attorney in Fact."

Ralph B. Bouldin's home address was in Forth Worth, Texas, in Tarrant County; however, he was employed by General Dynamics Corporation and was required to make extended trips away from home in his work. He was never present or active in any of the negotiations or dealings between the parties at times and occasions material to this controversy, but in fact left all the dealings up to his brother L. R. Bouldin. However, Ralph B. Bouldin was present at the time of trial, and testified therein.

At the time the contract was signed, Ralph B. Bouldin was in England. After Woosley and L. R. Bouldin signed same, the contract was mailed to Ralph B. Bouldin in England, where he signed it, ratifying and confirming the act of his brother L. R. Bouldin in executing same as his agent and attorney in fact.

As stated, the contract provided the option to purchase was required to be exercised "at any time during the first year of said lease." The first year would expire March 22, 1972. The following events took place in connection with the exercise of Woosley's option to purchase:

On March 7, 1972, Hon. David B. Christian, the attorney at law representing Woosley, wrote a letter to "Mr. Lee Roy Bouldin," but which letter was addressed to "1217 John Ragen Drive, Fort Worth, Texas," which in fact was Ralph B. Bouldin's home address. This letter stated in formal terms that it constituted written notice of the exercise of the option by Woosley to purchase the 540 acres of land. This letter was sent "Certified Mail, Return Receipt Requested," and was sent to Ralph B. Bouldin's home address. It so happened at the time the letter arrived that Ralph B. Bouldin was at home. He (Ralph B. Bouldin) testified he received the letter at the post office, and saw that it was addressed to his brother L. R. Bouldin. He said he did not open the letter, but had it forwarded to his brother at his address in Hurst, Texas (in Tarrant County). L. R. Bouldin signed for and received the letter on March 13, 1972. Shortly after receiving and forwarding the letter, Ralph B. Bouldin left to go to work at Las Vegas, Nevada. L. R. Bouldin called his brother by telephone and advised him that the letter was from Woosley's lawyer exercising the option to purchase the land.

Also, L. R. Bouldin, after receiving the letter, talked by telephone to Hon. David Christian, at which time L. R. Bouldin raised no question about his authority to represent his brother Ralph B. Bouldin. Mr. Christian testified that he had never met Ralph B. Bouldin, so he sent the letter to L. R. Bouldin at the address which he had in his file that he believed at the time was L. R.'s address.

The contract contained provisions that in the event Woosley desired to subdivide or cut off a portion of the premises and sell same that he could do so subject to written approval of "second parties" (the Bouldins) as to the location, in which event the Bouldins would be paid at the rate of $175.00 per acre for the portion sold in return for a partial release.

On March 3, 1972, Woosley entered into a written contract with one Walter Potts and one Joe F. Slavin, wherein Woosley agreed to convey the 540 acre tract to Potts and Slavin under certain conditions; however, this contract was specifically made subject to Woosley's completion of the exercise of his option to purchase the land from the Bouldins. Nonetheless, Woosley did give Potts and Slavin possession of the 540 acre tract immediately upon execution of the contract and payment of $1000.00 earnest money. Potts and Slavin went into possession immediately after March 3, 1972, whereupon they proceeded to take down fences, bulldoze trees to make a road or roads through the place, had smaller tracts surveyed, made sales to various individuals and received deposits therefor, the details of which transactions need not be mentioned herein. Suffice it to say that shortly after L. R. Bouldin received Mr. Christian's letter of March 7, 1972, exercising Woosley's option to purchase, he (L. R. Bouldin) was in Bosque County in the vicinity of the land in question, on which occasion he overheard talk informing him of all the activity taking place on the 540 acre tract. Upon making a trip to the premises he verified the activity and for the first time became acquainted with Mr. Potts. All this activity disturbed L. R. Bouldin, and he arranged with Potts for a meeting to be had in the office of Hon. J. P. Word, who was the attorney representing him (Bouldin). There is testimony that this meeting took place in Mr. Word's office on Saturday, March 18, 1972, wherein L. R. Bouldin and Mr. Word conferred with Woosley, Potts and Slavin. The upshot of the meeting was that L. R. Bouldin was concerned about the insufficiency of $175.00 per acre to be paid him and his brother Ralph B. Bouldin for partial releases in the event of subdivision. He was also upset because of all the activity of Potts and Slavin taking place without anyone consulting him ahead of time. At this meeting Potts and Slavin offered to pay him at the rate of $300.00 per acre for any partial releases; however, this matter was not resolved at this meeting.

Two days after this meeting, Mr. Word as the Bouldin attorney wrote a letter to Mr. Christian as Woosley's attorney, which letter was dated March 20, 1972. This letter informed Mr. Christian that L. R. Bouldin agreed to sign the deed to the subject land on the conditions that one Leslie B. Vance would be made Trustee in the deed of trust, and that an acknowledgement be prepared for Ralph B. Bouldin in Clark County, Nevada, for his signature to the deed. Ralph B. Bouldin was at that time working in Las Vegas, Nevada. Mr. Word also pointed out a suggested minor change in the deed which Mr. Christian had theretofore prepared and submitted to him. Mr. Word's letter concluded by saying, "When the corrections have been made, if you will send the deed to Mr. L. R. Bouldin, he will sign it and send it to Ralph B. Bouldin for his signature."

After Mr. Christian had received Mr. Word's letter above-described, Mr. Christian made the changes suggested by Mr. Word in the deed and wrote L. R. Bouldin a letter on March 23, 1972, enclosing the deed with

the request that L. R. Bouldin execute it and then forward it on to Nevada to Ralph B. Bouldin for his signature and execution. The Bouldin brothers refused to sign the deed, which brought about the filing of this suit by Woosley for specific performance.

Defendant-Appellants contend that L. R. Bouldin's authority to act as Ralph B. Bouldin's agent extended only to the execution of the contract and no further. This being so, they assert that in March 1972 during all the negotiations concerning Woosley's exercise of option to purchase as hereinabove outlined, L. R. Bouldin was acting only for himself and not as agent for Ralph B. Bouldin. Since Appellants contend that only L. R. Bouldin received the written notice of exercise of option to purchase (Mr. Christian's letter of March 7, 1972), they argue that Ralph B. Bouldin never was given "valid, effective, and timely notice" of Woosley's exercise of option to purchase. We do not agree with this contention.

In the first place, Appellants themselves created the agency relationship by virtue of the language used in connection with both of their signatures to the contract, as hereinabove quoted, and represented such agency relationship to Woosley. The specific question then arises: Did the agency relationship end with the execution of the contract, as contended by Appellants; or did it continue thereafter so as to include the dealings between the parties when Woosley undertook to exercise his option to purchase, as contended by Appellee?

We hold that the agency relationship continued from the execution of the contract down through the exercise of the option to purchase. An agency which is shown to have once existed is ordinarily presumed to have continued. Woosley without notice of a revocation of such agency was justified in so presuming and acting on the apparent unrevoked authority. *Quanah, A. & P. Railway Co. v. Dickey* (Amarillo, Tex.Civ.App.1915) 179 S.W. 69, writ refused; *Buckley v. Gulf Refining Co.* (Amarillo, Tex.Civ.App.1938) 123 S.W.2d 970, error dismissed, judgment correct; 2 Tex.Jur.2d "Agency", par. 14, p. 450. If an agent's acts are within the scope of his authority, and are related to matters over which such authority extends, notice to the agent is then deemed to be notice to the principal. See 2 Tex.Jur.2d "Agency", par. 183, p. 629 and the cases therein cited.

In the case at bar, throughout all the dealings between the parties as hereinabove outlined, there is no evidence that Ralph B. Bouldin at any time said anything or did anything to revoke the agency relationship whereby his brother L. R. Bouldin was acting for him. From the four corners of the record it is clear that Ralph B. Bouldin intended for L. R. Bouldin to act as his agent in all of his dealings concerning and surrounding Woosley's exercise of his option to purchase. L. R. Bouldin's lack of authority to act as Ralph B. Bouldin's agent was never at any time or in any manner raised until after this suit was filed. In other words, during the negotiations between the parties surrounding the exercise of Woosley's option to purchase, Woosley and his attorney had every reason to rely upon the agency relationship, insofar as giving written notice of the exercise of the option to purchase was concerned. For the above reasons, we overrule appellants' first point of error.

Aside from the problem as to whether L. R. Bouldin had actual authority to act for Ralph B. Bouldin, in any event we hold that Ralph B. Bouldin clothed L. R. Bouldin with apparent authority as his agent. See Tex. Jur.2d "Agency", pars. 43 through 46, inclusive, p. 481 et seq.

Appellants' second point asserts error of the trial court in decreeing specific performance, because 200 acres of the 540 acre tract in question was the homestead of L. R. Bouldin. We overrule this contention.

Defendant-Appellants (the Bouldins) did not plead homestead, and therefore did

**280**

not raise this issue. If a homestead right is relied upon, either as a cause of action or as a defense, it must be pleaded. *Shonaker v. Citizens' Loan and Investment Co.* (Austin, Tex.Civ.App.1928) 8 S.W.2d 566, writ refused. Also see *Johnson v. Echols* (Eastland, Tex.Civ.App.1929) 21 S.W.2d 382, writ refused; 28 Tex.Jur.2d "Homesteads", par. 82, page 474.

The only evidence bearing upon the homestead question was testimony from L. R. Bouldin wherein he testified that he moved on the land in controversy in April 1973 and claimed 200 acres of the 540 acres as his homestead "through the tax office down here." The record shows that he was living in Tarrant County, Texas, at the time that Woosley exercised his option to purchase. L. R. Bouldin testified that "I think I was in Forth Worth about two years" before "moving back" on the 540 acres in April 1973. The record reflects that he was not living on the land in controversy at the time the contract was made, or at the time the option to purchase was exercised, or at the time suit was filed (July 26, 1972), but that he moved on the 540 acres in April 1973, over eight months after this suit was filed. The record is silent as to L. R. Bouldin's marital status or family status at any time material to this controversy, and is likewise silent as to which 200 acres of the 540 acres he is claiming as a homestead.

The burden of proving a homestead is upon the party claiming same. *Campbell v. First National Bank in Lubbock* (Amarillo, Tex.Civ.App. 1935) 88 S.W.2d 1084, writ refused. Aside from Defendant-Appellants' failure to plead their claim of homestead, we hold the proof to be insufficient to establish such claim. For a good discussion of sufficiency of such evidence, see *Campbell v. First National Bank, supra.* For the above reasons, Appellants' second and final point is overruled.

Judgment of the trial court is accordingly affirmed.

Affirmed.